Wilson, J.,
delivered the opinion of the court.
This is an appeal from a decree of the court in the matter of the adjudication of priorities to the use of water in water district number sixty-seven (67).
The ditch of appellee was adjudged to have priority No. 5, for an appropriation of 67.5 cubic feet of water per second of time, and that of appellant was decreed priority No. 11, for an appropriation of 69 cubic feet of water per second of time.
The case comes before us on the exceptions of appellant solely to that part of the finding and decree of the court which relates to the priority of the ditch or canal of appellee.
It is urged on behalf of the appellant and assigned as error that “the testimony in behalf of the appellee in reference to the beneficial application of water to the land was so uncertain, vague and indefinite that the court erred in rendering any decree whatever on behalf of the appellee; ” but counsel say in their brief that the sole question which they desire to raise upon this appeal is: “ What degree of certainty must exist in testimony concerning the acreage continuously and beneficially irrigated to warrant a court in entering a decree of priority for an irrigating ditch ? ”
We have carefully read the whole record before us with reference to this objection.
The proceedings for the adjudication of the water rights in this district were initiated by the appellant and one other owner of a canal by a petition filed November 24, 1893, and a referee was appointed by the court on December 7th following. After several extensions of -time were granted, the referee presented a report on February 1st, 1895, and on February 26th following, the court, being of opinion that, “on account of the volume of the record herein, the difficult questions involved and the magnitude of the interests to be affected,” no final decree should be rendered until the court *440 should have “sufficient time for full examination and investigation of all questions of law and fact involved,” entered up an interlocutory decree only for the temporary guidance and government of the parties interested.
On July 1st following, the court rendered its final decree sustaining the findings of the referee as to the rights of the parties to this appeal, and in accordance therewith.
The whole proceedings in this adjudication seem, so far as disclosed by the record, to have been conducted with that caution and deliberation which was demanded by the important interests at stake. The report of the referee bears evidence of having been prepared with great care, and displays an intelligent appreciation and knowledge of the principles involved in the reference. His conclusions of law, so far as the matters concerned in this appeal are affected, appear to have been correct, and his findings of fact were warranted by the evidence. It is true that he says “ the proofs in many cases are uncertain, and the evidence in many cases amounts to but little more than a guess,” and, further referring specially to the ditch of appellee, “ the evidence is very unsatisfactory as to the exact number of acres of land irrigated from this ditch,—that is, the number irrigated in good faith; ” but in his findings of fact, at least so far as appellee is concerned, he seems to have made due and full allowance for any deficiency of positive testimony.
The appellee claimed the capacity of its ditch to be 137.4 cubic feet per second, and that by it an appropriation of water sufficient for the irrigation of about sixty-five hundred acres, belonging to the ditch owners, had been actually made. There was also testimony of two witnesses who had been connected with the ditch from the time its construction was begun in September, 1884—one, the president of the company, and the other its manager,—that of these lands there had been irrigated through this ditch from three to four thousand acres, the manager stating positively that all of the water which the ditch carried had been applied to the land lying under it. If this be true, taking the capacity of the *441 ditcb at only 104.49 cubic feet per second, as found by the referee, this water so applied was sufficient, according to the evidence, for the irrigation of nearly six thousand acres.
The referee found, however, that there had been irrigated from this ditch only three thousand acres; that this amount of land would require 54 cubic feet for its irrigation; and that, allowing for seepage and evaporation, there would be required at the headgate 67.5 cubic feet per second of time. This finding was approved by the court and decree rendered accordingly.
We must confess our inability to give a definite answer to the question suggested by counsel for appellee, and which they say is the sole one desired to be raised on this appeal. This must depend upon the facts of each particular case, upon the character, intelligence, interest and opportunities for information of the witnesses, as well as their manner of testifying, upon the length of time over which the proofs are required to extend, upon the topographical features of the land in controversy, and upon numerous other incidents which occur to the individual as the occasion presents itself in the every day business of life. To determine what amount or degree of certainty must exist in testimony to substantiate a given fact, appellate courts must rely almost wholly upon the judgment and perception of nisi prius judges, and the instruments which they employ, whether, jurors or referees.
It is urged upon us that the custom of appellant to keep memoranda, based upon actual surveys and made during the irrigating seasons, so as to show precisely what acreage had been irrigated in each year and its particular location, in what crops particular tracts had been planted, and how much of each forty acre tract had not been or could not be irrigated, or was used for buildings, cattle enclosures or other purposes, is the proper practice to be pursued by appropriators of water.
This practice cannot be too highly commended, and, if more generally followed, would render proof in such cases as this much easier and more- certain, as well as save much time and trouble to courts and judges. This court must confine *442 itself strictly, however, to its commendation and approval of this most laudable method of preserving accurate testimony. It cannot declare, in the face of the fact, that disastrous consequences would in many cases assuredly follow, that the proof necessary to maintain water rights, which affect interests of some immense value in this state, must be measured by such a standard only, and stand or fall thereby. Such a rule would be especially inequitable and unjust to the early appropriators of water. They were the pioneers of their respective localities, and founded their homes when the supply of water was abundant,—in excess of all demands,—and neither law, custom nor necessity required them to keep an accurate account of the quantity of water used or the amount of land cultivated or irrigated.
It should be remembered, too, as pertinently suggested by counsel for appellee themselves, “ that in the early years of water adjudications in this state, priorities were decreed upon the capacity of the ditches.” During those years the information acquired and preserved by the use of this custom would not have been material in determining the quantity of water to which an appropriator was entitled.
We would be very reluctant at any time to set aside the decree of a court on the ground that it is not supported by the evidence where, as in this case, it appears to have been rendered only after long and careful consideration and deliberation.
After a full examination of this record, we are unable to perceive any error, and it is therefore ordered that the judgment and decree be affirmed.

Affirmed.